IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:23-CV-576-FL

KEON HOBGOOD,

    Plaintiff/Claimant,

v.

MARTIN O'MALLEY, *Commissioner of Social Security*,

    Defendant.

MEMORANDUM AND RECOMMENDATION

This matter is before the court on the parties' briefs filed pursuant to the Supplemental Rules for Social Security Actions. [DE-15, -17]. Claimant Keon Hobgood ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the denial of her applications for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") payments. The time for responsive briefing has expired, and the matter is ripe for adjudication. Having carefully reviewed the administrative record and the briefs submitted by the parties, it is recommended that the matter be remanded for further consideration.

## I. STATEMENT OF THE CASE

Claimant protectively filed an application for a period of disability and DIB on June 24, 2020, and also filed an SSI application on December 11, 2020, in both applications alleging disability beginning January 6, 2020. (R. 19, 216–19, 239–45). The claims were denied initially and upon reconsideration. (R. 19, 76–117). A hearing before the Administrative Law Judge ("ALJ") was held on October 12, 2022, at which Claimant, represented by counsel, and a vocational expert ("VE") appeared by telephone and testified. (R. 37–75). On January 18, 2023,

the ALJ issued a decision denying Claimant's request for benefits. (R. 16–36). On April 13, 2023, the Appeals Council denied Claimant's request for review. (R. 6–11). Claimant then filed a complaint in this court seeking review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

## III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. §§ 404.1520 and 416.920 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. §§ 404.1520a(b)–(c) and 416.920a(b)–(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *Id.* §§ 404.1520a(c)(3), 416.920a(c)(3). The ALJ is required to incorporate into the written decision pertinent findings and conclusions based on the "special technique." *Id.* §§ 404.1520a(e)(3), 416.920a(e)(3).

## IV. ALJ'S FINDINGS

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant had not engaged in substantial

3

gainful employment since January 6, 2020, the alleged onset date. (R. 21–22). Next, the ALJ determined Claimant had the severe impairments of degenerative disc disease, osteoarthritis, obesity, left acetabular fracture status post open reduction internal fixation, and migraine, and the non-severe impairments of interstitial cystitis, closed fracture of right foot sesamoid bone, small bowel obstruction, status post gastric bypass, pyelonephritis, anemia, left shoulder pain, depressive disorder, and anxiety. (R. 22–23). Applying the special technique prescribed by the regulations, the ALJ found that Claimant's mental impairments had resulted in mild limitations in understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *Id.* At step three, the ALJ concluded Claimant's impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 23–24).

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform a reduced range of light work[1] with the following limitations:

> [S]he can occasionally climb ramps and stairs; she can never climb ladders, ropes or scaffolds; she can occasionally stoop, kneel, crouch and crawl and she can have no exposure no unprotected heights.

(R. 24–28). In making this assessment, the ALJ found Claimant's statements about her limitations not entirely consistent with the medical and other evidence of record. (R. 25). At step four, the ALJ concluded Claimant was able to perform her past relevant work as a recreation specialist. (R.

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time. 20 C.F.R. §§ 404.1567(b), 416.967(b).

4

28–30). Alternatively, at step five, upon considering Claimant's age, education, work experience, and RFC, the ALJ determined Claimant was capable of performing other jobs that exist in significant numbers in the national economy. *Id.*

## V. DISCUSSION

In this case, Claimant alleges the ALJ erred by (1) failing to perform a proper function-by-function evaluation of Plaintiff's ability to sit, stand, and walk when formulating the RFC, and (2) failing to apply the correct legal standard in evaluating Claimant's allegations of pain. Pl.'s Br. [DE-15] at 4–14. Defendant contends the ALJ sufficiently explained her decision, which applied the appropriate legal standards and was supported by substantial evidence. Def.'s Br. [DE-17] at 7–18.

The RFC is the capacity an individual possesses despite the limitations caused by physical or mental impairments. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); *see also* S.S.R. 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The RFC is based on all relevant medical and other evidence in the record and may include a claimant's own description of limitations arising from alleged symptoms. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(3); *see also* S.S.R. 96-8p, 1996 WL 374184, at *5. "[T]he residual functional capacity 'assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions' listed in the regulations." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (quoting S.S.R. 96-8p). The ALJ must provide "a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.* (quoting S.S.R. 96-8p). "Only after such a function-by-function analysis may an ALJ express RFC 'in terms

5

of the exertional levels of work.'" *Monroe v. Colvin*, 826 F.3d 176, 179 (4th Cir. 2016) (quoting *Mascio*, 780 F.3d at 636); *see also Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000) (observing that the ALJ "must build an accurate and logical bridge from the evidence to his conclusion"). However, the Fourth Circuit has rejected "a per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis." *Mascio*, 780 F.3d at 636. Rather, the court explained that "[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Id.* (citation omitted).

Federal regulations 20 C.F.R. §§ 404.1529(a) and 416.929(a) provide the authoritative standard for the evaluation of subjective complaints of pain and symptomology, whereby "the determination of whether a person is disabled by pain or other symptoms is a two-step process." *Craig*, 76 F.3d at 593–94. First, the ALJ must objectively determine whether the claimant has medically documented impairments that could cause the alleged symptoms. SSR 16-3p, 2016 WL 1119029, at *3 (Mar. 16, 2016); *Hines v. Barnhart*, 453 F.3d 559, 564 (4th Cir. 2006). If the ALJ makes that determination, he must then evaluate "the intensity and persistence of the claimant's pain[,] and the extent to which it affects her ability to work," *Craig*, 76 F.3d at 595, including whether the claimant's statements are supported by the objective medical record. SSR 16-3p, 2016 WL 1119029, at *4; *Hines*, 453 F.3d at 564–65.

Objective medical evidence may not capture the full extent of a claimant's symptoms, so where the objective medical evidence and subjective complaints are at odds, the ALJ should consider all factors concerning the "intensity, persistence and limiting effects" of the claimant's symptoms. SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3)

6

(showing a complete list of factors). The ALJ may not discredit a claimant solely because his or her subjective complaints are not supported by objective medical evidence, *Craig*, 76 F.3d at 595–96, but the ALJ is not required to accept the claimant's statements at face value; rather, the ALJ must "evaluate whether the statements are consistent with objective medical evidence and the other evidence." SSR 16-3p, 2016 WL 1119029, at *6; *see Taylor v. Astrue*, No. 5:10-CV-263-FL, 2011 WL 1599679, at *4–8 (E.D.N.C. Mar. 23, 2011), *report and recommendation adopted*, 2011 WL 1599667 (E.D.N.C. Apr. 26, 2011).

Claimant testified that she experiences back pain that radiates to the bottoms of her feet and that she can stand for only about thirty minutes holding onto something and for about twelve minutes unsupported, she can walk for only six or seven minutes without stopping because she gets winded and requires a cane much of the time, and she can sit for about thirty or forty minutes if she changes positions. (R. 53–55). Claimant elevates her legs in a recliner most of the day due to swelling and uses a cane for both walking and balance. (R. 52–53, 56–57). Claimant rated her pain an 8 out of 10. (R. 60).

The ALJ found that Claimant could perform light work, i.e., lift and carry up to 20 pounds occasionally and 10 pounds frequently as well as sit, stand and/or walk up to six hours each during an eight-hour workday, with some additional postural limitations. (R. 24). The ALJ acknowledged Claimant's testimony regarding her back and lower extremity pain, as well as some of the limiting effects to which Claimant testified, but found that Claimant's testimony was not entirely consistent with other evidence in the record. (R. 24–25). The ALJ summarized the medical records of Claimant's treatment for lumbar radiculopathy and hip pain, as well as Claimant's pain management with injections and medications, from 2020–2022. (R. 25–26). The ALJ also

7

discussed a consultative examination from March 2022, assessing Claimant's back and hip pain and leg weakness, which the ALJ later found to be unpersuasive. *Id.*; (R. 27). The ALJ found that the medical evidence demonstrated Claimant's impairments were not totally debilitating, explaining that although she "exhibited decreased sensation in the left leg on a consistent basis and occasional displays of antalgic gait," she also "generally had intact strength, range of motion and no need for an assistive device to move around," and her obesity "does not preclude the performance of routine movements necessary in a typical work environment." (R. 26). The ALJ concluded,

> In sum, the claimant's treatment for her conditions show[s] generally mild restrictions and her allegations of disability are not consistent with the minimal objective findings. Recognizing that the claimant does have limitations because of her conditions, including the need for ongoing pain management, documented diminished sensation in the left leg and her non-severe conditions listed above, the undersigned has reduced her residual functioning capacity to light work with the additional postural and environmental limitations noted above.

*Id.* The ALJ also found persuasive the opinion of the state agency reviewer, Dr. Gerrish, that Claimant could perform light work with postural limitations. (R. 27).

In this case, the ALJ's failure to conduct a function-by-function assessment of Claimant's ability to stand and walk is error requiring remand given the contradictory evidence in the record and the lack of explanation for the ALJ's conclusion that Claimant can stand or walk for up to six hours in an eight-hour workday, as required for light work, S.S.R. 83-10, 1983 WL 31251, at *6 (1983). The ALJ impermissibly cherrypicked evidence that would support a finding of not disabled and ignored evidence favorable to the Claimant, and the lack of explanation regarding how the ALJ considered Claimant's ongoing pain impedes the court's ability to conduct a meaningful review of the ALJ's RFC assessment.

8

When discussing Claimant's medical records for pain management, the ALJ noted that Claimant received injections in March and June 2021 and cited Claimant's improvement with injections and medication in May, August, and December of 2021. (R. 25). The ALJ also noted that during that time frame Claimant demonstrated both negative straight-leg raise testing, full motor strength with an antalgic gait, and reduced sensation at the L5 dermatome; reported feeling better with medications but still experiencing stiffness and being able to keep up with her motherhood duties; and had limited range of motion in the spine, reduced sensation in the left leg, and full strength. *Id.* The ALJ noted that in May 2022, Claimant continued to receive pain medications for her arthritis without adverse side effects, reported low back pain radiating to her lower extremities with associated numbness in her left leg, and demonstrated positive straight-leg raise testing but intact strength and a steady gait. (R. 26). The ALJ then characterized Claimant's treatment as showing "generally mild restrictions" and found that Claimant's allegations of disability were "not consistent with the minimal objective findings." *Id.* The medical records cited by the ALJ, however, do not provide substantial evidence to support the ALJ's conclusions.

For example, on May 11, 2021, Claimant presented to the Spine & Pain Center in follow up to her March 4, 2021 evaluation for lumbar radiculopathy and for pain management. (R. 476). Claimant did report her pain was better with medication, as noted by the ALJ, but her pain was still a 7 out of 10 and was reported as constant and aching with radiating, tingling, and numbness. *Id.* In addition to the negative straight-leg raise testing, full motor strength with an antalgic gait, and reduced sensation at the L5 dermatome noted by the ALJ, (R. 25, 476), examination also revealed left and right paraspinal musculature tender to palpation, midline tenderness, bilateral SI joint tenderness, positive bilateral facet loading test, and lumbar spine range of motion was grossly

9

limited and with pain, (R. 476). Claimant also demonstrated positive bilateral axial loading test, positive bilateral FABER test, and positive right Gaenslen's test in her hips, *id.*; the impression noted her exam and presentation was consistent with lumbar radiculopathy and lumbar facet joint syndrome, (R. 477); and her pain was noted as "Inadequately Controlled" and her most recent imaging demonstrated multilevel spondylosis and spinal stenosis, (R. 478). On June 23, 2021, Claimant underwent a lumbar medial branch block for diagnostic purposes, (R. 471–72), and on July 8, 2021, Claimant reported excellent but short-lived pain relief from the block and was scheduled for lumbar radio frequency ablation ("RFA") for her worsening facet joint pain, (R. 482–87). A treatment note from August 2021 did indicate Claimant reported some relief from injections and medications, as the ALJ noted (it also indicated rest improved her symptoms, which the ALJ failed to note), (R. 25), but her pain levels remained at a 6 out of 10 and another round of lumbar RFA was scheduled for her worsening facet joint pain, (R. 571). In December 2021, Claimant reported her pain had slowly improved due to injections and medication to a 5 out of 10, providing increased functionality and ability to keep up with her motherhood duties, as noted by the ALJ, but her gait remained antalgic and her exam "positive for provocative axial spine tests pointing to facet dysfunction as well as myofascial components." (R. 594–97). Importantly, the latest treatment notes from 2022 demonstrate that Claimant reported going to the emergency department several times and receiving Toradol shots; she continued to demonstrate tenderness and limited range of motion in the lumbar spine with positive straight-leg raise testing, and her most recent MRI demonstrated "a posterior central disc protrusion with moderate bilateral neural foraminal stenosis exacerbated by facet hypertrophy"; it was noted that due to conservative treatments having failed and/or the severity of pain and functional impairment, interventional

10

treatment was recommended; and a bilateral epidural steroid injection did not relieve Claimant's pain, which had increased to 8 out of 10. (R. 1405, 1408, 1428–29).

These treatment notes do not reflect "minimal objective findings" or that the "objective medical evidence" supports the RFC, i.e., Claimant's ability to stand or walk for six hours out of an eight-hour workday as found by the ALJ. (R. 26). In support of the ALJ's decision, the Commissioner points to the ALJ's notation of Claimant's reports that injections temporarily improved her back pain, she felt better with medication, and she was able to keep up with her motherhood duties despite her pain. Def.'s Mem. [DE-17] at 10 (citing R. 25, 537, 546, 552, 595, 1389). As discussed above, the medical records indicate (and the Commissioner acknowledges) that the relief was temporary, and her pain levels were reduced to at best a 5 out of 10 and then subsequently increased to an 8 out of 10. *See Tyndall v. Kijakazi*, No. 5:22-CV-403-RJ, 2023 WL 7149493, at *6 (E.D.N.C. Oct. 31, 2023) (finding remand necessary where the ALJ's analysis "paints an incomplete picture by only citing evidence demonstrating improvement in Claimant's pain and ignoring evidence showing her pain improved after injections only to increase again.") (citing *Lewis v. Berryhill*, 858 F.3d 858, 869 (4th Cir. 2017) ("An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherrypick facts that support a finding of nondisability while ignoring evidence that points to a disability finding.")). Additionally, the Fourth Circuit has recognized that the ability to carry out daily activities, such as caring for children, is often consistent with an *inability* to sustain full-time work due to pain and other symptoms. *See Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 101 (4th Cir. 2020); *Norton v. Comm'r of Soc. Sec. Admin.*, No. 1:20-CV-285-MOC-WCM, 2021 WL 5822239, at *3 (W.D.N.C. Nov. 8, 2021), *adopted by*, 2021 WL 5815831 (W.D.N.C. Dec. 7, 2021). The Commissioner also

11

cites the state agency reviewer opinion of Dr. Gerrish that Claimant can perform a reduced range of light work in support of the ALJ's decision, but Dr. Gerrish did not have the benefit of Claimant's testimony regarding the severity of her symptoms and associated limitations or treatment records from later in 2022 showing worsening of Claimant's pain and failure of treatment. (R. 103). Accordingly, because the reasons given by the ALJ in the RFC analysis are not supported by the evidence cited in the decision, the court cannot find that substantial evidence supports the RFC and the matter should be remanded for further consideration.

## VI. CONCLUSION

For the reasons stated above, it is recommended that the matter be remanded for further consideration.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until **October 8, 2024** to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C. Any response to objections shall be filed by within **14 days** of the filing of the objections.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum**

12

and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation. *See Wright v. Collins*, **766 F.2d 841, 846-47 (4th Cir. 1985).**

Submitted, this the 24 day of September, 2024.

Robert B. Jones, Jr.
United States Magistrate Judge